# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLY DIM SUM GARDEN, INC., et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 2:19-cv-03606-AB |
| v. | : | |
| | : | |
| DIM SUM MANIA, LLC, et al., | : | |
| Defendants. | : | |

**September 10, 2019**                                                                                    **Anita B. Brody, J.**

## EXPLANATION AND ORDER

Plaintiffs Philly Dim Sum Garden, Inc. ("Philly Dim Sum Garden") and Dim Sum House, Inc. ("Dim Sum House") bring this action against Defendants Dim Sum Mania, LLC ("Dim Sum Mania") and Jintao Guo alleging trademark violations, unfair competition, and misappropriation of publicity. Plaintiffs move to disqualify defense counsel Robert Gamburg, Esq. ("Gamburg") and the law firm Gamburg & Benedetto, LLC ("Gamburg & Benedetto") because of a conflict of interest.[1] Because I find a conflict of interest that merits disqualification, I grant Plaintiffs' motion to remove Gamburg and Gamburg & Benedetto as defense counsel.

---

[1] In their opposition to the motion to disqualify, Defendants suggest that the court adjourn further action in this case until the resolution of a motion in an unrelated case filed in the Philadelphia Court of Common Pleas involving the same law firms and some of the same parties. *See Zhang v. Tom's Dim Sum, LLC*, No. 181203329 (Pa. C.P. Phila. Cty. 2018). Defendants have not filed a relevant motion in this court, however.

1

## I. BACKGROUND

### A. Underlying Dispute

Plaintiffs, Philly Dim Sum Garden and Dim Sum House, run two branches of a Chinese restaurant called Tom's Dim Sum. One branch is in Philadelphia and the other is in Media, Pennsylvania. Plaintiffs claim that Defendants opened a Chinese restaurant called Tom's Dim Sum Mania about twenty feet from Tom's Dim Sum's location in Media.

"Tom" refers to defendant Jintao "Tom" Guo, who used to manage the daily operations of both Tom's Dim Sum restaurants. On September 4, 2018, Guo parted ways with the two restaurants that bear his name, Tom. According to Plaintiffs, on July 18, 2019, Guo and defendant Dim Sum Mania then opened Tom's Dim Sum Mania.

Plaintiffs, Philly Dim Sum Garden and Dim Sum House, are wholly owned by Tom's Dim Sum, LLC. Tom's Dim Sum, LLC itself has four owners. One of the owners of Tom's Dim Sum, LLC, Jin Wang, was a party in the prior litigation described below. One of the current plaintiffs, Philly Dim Sum Garden, was also a party in that action.

### B. Prior Representation

Gamburg of the law firm Gamburg & Benedetto represents Defendants in this case. Gamburg's partner in that firm is Donald Benedetto, Esq. ("Benedetto"). Benedetto represented Philly Dim Sum Garden, a plaintiff in the current litigation, and Jin Wang, one owner of Philly Dim Sum Garden, in a previous trademark dispute over the name of two Chinese restaurants, *Shanghai Dim Sum Garden, Inc. v. Song Enterprise, LLC*, No. 2:14-cv-01940-MH (E.D. Pa. 2014) (the "Song Litigation"). Benedetto was then an associate with the Bahuriak Law Group. Benedetto and the Bahuriak Law Group represented Philly Dim Sum Garden and Wang (as well as Guo) in the Song Litigation.

The Song Litigation lasted from 2014 to 2015 and involved strikingly similar facts to the ones in the present litigation. Some of the causes of action in the Song Litigation overlapped with those at issue in the current litigation, including trademark violations and unfair competition.[2]

Benedetto personally represented current plaintiff Philly Dim Sum Garden. His former firm represented Wang.[3] In her affidavit, Wang says that she was Philly Dim Sum Garden's authorized representative for the Song Litigation, and that she and Benedetto communicated frequently and met over thirty times to discuss "all aspects of the litigation and its effects on Philly Dim Sum Garden." Aff. Jin Wang ¶¶ 10, 12, ECF No. 13-2. In 2015, the Song Litigation settled. At some point after the settlement, Plaintiffs changed the restaurant's name from Dim Sum Garden to Tom's Dim Sum to eliminate confusion over the name.

Because of Benedetto's prior representation of Philly Dim Sum Garden and Wang, Plaintiffs now seek to disqualify Gamburg and Gamburg & Benedetto for a conflict of interest.

## II.  LEGAL STANDARD

"Federal courts have inherent authority to supervise the conduct of attorneys appearing before them." *Jordan v. Philadelphia Hous. Auth.*, 337 F. Supp. 2d 666, 671 (E.D. Pa. 2004). This court has adopted the Pennsylvania Rules of Professional Conduct to govern attorney conduct. *See Reading Anthracite Co. v. Lehigh Coal & Navigation Co.*, 771 F. Supp. 113, 114-15 (E.D. Pa. 1991). "[T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the

---

[2] At the time of the Song Litigation, current plaintiff Philly Dim Sum Garden, with others, ran a restaurant called Dim Sum Garden. That restaurant later became Tom's Dim Sum in Philadelphia. Some owners of Dim Sum Garden who are not a part of the present litigation had a falling out with the other owners. They opened a different restaurant—also called Dim Sum Garden. Both sides sued in the Song Litigation.
[3] Plaintiffs describe Benedetto as having represented Wang in the Song Litigation. David S. Bahuriak of the Bahuriak Law Group, where Benedetto was an associate, was Wang's attorney of record. The distinction does not alter the analysis here.

applicable disciplinary rule," given "the ends that the disciplinary rule is designed to serve." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). The court should also consider "any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.*

The party moving for disqualification bears the burden of showing that the representation is impermissible. *Jordan*, 337 F. Supp. at 672. However, "[a]ny doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification." *Id.* (quoting *Henry v. Del. River Joint Toll Bridge Comm'n*, No. CIV. A. 00-6415, 2001 WL 1003224, at *1 (E.D. Pa. Aug. 24, 2001)).

Because the determination whether to disqualify involves balancing different policies, "[a] finding that counsel is in violation of the Rules of Professional Conduct does not result in automatic disqualification." *Henry*, 2001 WL 1003224, at *6. "If the Rules have been violated, the court's final step must be to address whether disqualification of counsel furthers the purposes of the Rules." *Jordan*, 337 F. Supp. 2d at 672.

## III. DISCUSSION

Plaintiffs move to disqualify defense counsel under Pennsylvania Rules of Professional Conduct 1.9, Duties to Former Clients, and 1.10, Imputation of Conflicts of Interest. They argue that Rule 1.9 disqualifies Benedetto (and thus Gamburg & Benedetto) because Defendants' interests are materially adverse to those of his former clients Philly Dim Sum Garden and Wang, and the Song Litigation is substantially related to this case. The parties do not dispute that under Rule 1.10, Benedetto's disqualification would extend to Gamburg and Gamburg & Benedetto.

Defendants respond that Rule 1.9 does not prohibit the representation because the Song Litigation is not substantially related to this case.

**A. Existence of a Violation**

If Rule 1.9 does disqualify Benedetto, it also disqualifies Gamburg, because they are in the same firm. Pennsylvania Rule of Professional Conduct 1.10 provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by" Rule 1.9, "unless permitted by Rule[] 1.10(b) . . . ." Pa. R. Prof'l Conduct 1.10(a). Rule 1.10(b) allows firms, under certain conditions, to avoid assuming the conflicts of interest incoming lawyers import when they join the firm. Two such conditions are that the disqualified lawyer be "screened from any participation in the matter" and "apportioned no part of the fee" from the case. Pa. R. Prof'l Conduct 1.10(b)(1). Gamburg does not argue that Rule 1.10(b) allows him to continue the representation, nor does he assert that Benedetto has been screened from the case and apportioned no part of its fees. Rather, defense counsel argues that Rule 1.9 does not disqualify Benedetto in the first place.

Plaintiffs request defense counsel's disqualification based primarily on Pennsylvania Rule of Professional Conduct 1.9(a). It provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

All but one of these criteria are readily met. Philly Dim Sum Garden and Wang are Benedetto's former clients, and the interests of defense counsel's current clients are materially adverse to theirs.[4] "There is no situation more 'materially adverse' than when a lawyer's former

---

[4] Defendants remark in a footnote that Philly Dim Sum Garden "is arguably not the same client" as it was in the Song Litigation because it is now owned by Tom's Dim Sum, LLC, which did not exist at the time of the prior

5

client is in a suit against that lawyer's current client . . . ." *Jordan*, 337 F. Supp. 2d at 672. Plainly, Philly Dim Sum Garden and Wang have not consented to Gamburg & Benedetto's representation of Defendants.

The only uncertainty is whether the Song Litigation is "substantially related" to this case. "Matters are 'substantially related' for purposes of [Rule 1.9] if they involve . . . a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Pa. R. Prof'l Conduct 1.9 cmt. 3. A substantial risk exists if "the lawyer and the client ought to have talked about" confidential information that "could be relevant or possibly detrimental to the former client in the present action," or if "it would not have been unusual for [such information] to have been discussed between lawyer and client during their relationship." *Jordan*, 337 F. Supp. 2d at 673 (internal quotation marks omitted).

The question is whether confidential information Wang "ought to have" disclosed in the Song Litigation, or which "it would not have been unusual for" her to disclose, could now be relevant or detrimental to her or Philly Dim Sum Garden. In her affidavit, Wang emphasizes the breadth and frequency of her communications with Benedetto, which included "numerous emails" and more than thirty meetings to discuss "all aspects of the litigation and its effects on Philly Dim Sum Garden." Aff. Jin Wang ¶¶ 10, 12. Plaintiffs argue that "any adequate representation of Philly Dim Sum Garden by Benedetto would have required an investigation" into its "use of the name 'Dim Sum Garden,' Philly Dim Sum Garden's confidential and proprietary business operations and the facts necessary to support Philly Dim Sum Garden's defense of the alleged" trademark violations and unfair competition. Pls.' Mot. Disqualify 13,

---

representation. *See* Defs.' Opp'n to Mot. Disqualify 5 n.1, ECF No. 18. It is unclear why that would matter, and in any case Wang is undisputedly the same client.

6

ECF No. 13-1. Despite the overlap between some of the legal issues, such as alleged trademark violations and unfair competition, Defendants respond that "none of the factual application of these causes of action are the same or even related." Defs.' Opp'n to Mot. Disqualify 2, ECF No. 18.

While Plaintiffs have not been very specific in describing the kind of confidential information Wang might have shared with Benedetto in the Song Litigation, the risk that Benedetto received confidences now detrimental to Philly Dim Sum Garden and Wang is too great to overlook. "Any doubts regarding the existence of a violation of an ethical rule should be construed in favor of disqualification." *Henry*, 2001 WL 1003224, at *1; *see also Reading Anthracite Co.*, 771 F. Supp. at 117 ("Admittedly, the nexus between the prior representation and the present case is not entirely clear. Any doubts, however, must be resolved in favor of the movant."). Wang might have discussed Philly Dim Sum Garden's finances; the value of the restaurant's brand, including its name; the price at which Philly Dim Sum Garden was willing to settle; and its litigation strategy. Although the disputed name in the Song Litigation was "Dim Sum Garden" and the disputed names here are variants of "Tom's Dim Sum," the value of the brand and of name recognition may be similar. The Song Litigation concluded in 2015—recently enough that any confidential information Wang shared could still hold true and harm her and Philly Dim Sum Garden. Therefore, the cases are "substantially related" and Gamburg & Benedetto's representation of Defendants in this case violates Rule 1.9(a).

## C. Whether the Violation Merits Disqualification

While defense counsel's representation in this case violates the Pennsylvania Rules of Professional Conduct, that conclusion does not demand an automatic disqualification. *See*

*Jordan*, 337 F. Supp. 2d at 672. That decision depends on whether disqualification furthers the purposes of the Rules. *See id.*

"The most significant policy weighing in favor of disqualification is the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system." *Id.* at 678 (internal quotation marks omitted). Public confidence in the judicial system depends on avoiding the appearance as well as the reality of professional misconduct. *See id.* Further, disqualification protects attorney loyalty to former clients, *see id.*, and encourages clients to share confidential information necessary for effective representation. The Rules themselves explain that "[t]he rule of imputed disqualification stated in [Rule 1.10](a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm." Pa. R. Prof'l Conduct 1.10 cmt. 2. "Policies weighing against disqualification include permitting a litigant to retain his chosen counsel and enabling attorneys to practice without excessive restrictions." *Jordan*, 337 F. Supp. 2d at 678 (internal quotation marks omitted).

In this case, the actual or apparent risk that defense counsel possesses confidential information detrimental to former clients tips the balance in favor of disqualification. The court's interests in protecting the integrity of, and public confidence in, the judicial system, as well as Wang's and Philly Dim Sum Garden's interest in attorney loyalty, outweigh Defendants' interests in retaining their counsel of choice and Gamburg & Benedetto's interest in practicing without excessive restrictions (the latter of which is only minimally infringed).

## IV. CONCLUSION

Because defense counsel's representation of Defendants violates Pennsylvania Rule of Professional Conduct 1.9 and disqualifying defense counsel best furthers the purposes of that

8

Rule, I grant Plaintiffs' motion to disqualify Gamburg and Gamburg & Benedetto from representing Defendants in this case.

## **ORDER**

**AND NOW**, this __10th_ day of September, 2019, it is **ORDERED** that Plaintiffs Philly Dim Sum Garden, Inc. and Dim Sum House, Inc.'s Motion to Disqualify Robert M. Gamburg, Esquire and the Law Firm of Gamburg & Benedetto, LLC (ECF No. 13), is **GRANTED.** In order to provide time for Defendants to obtain new counsel, all proceedings are **STAYED** until November 11, 2019, or until new counsel enters an appearance, whichever is sooner.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** 9/10/2019

]